Good morning, Your Honors. Shirley Wei Scher on behalf of the appellant Woul Park. I would like to reserve three minutes for rebuttal, please. I am representing Ms. Park Pro Bono today. May it please the Court? This Court is reviewing Ms. Park's naturalization appeal de novo. As Your Honors are aware, the appellant has filed a motion for judicial notice of the Superior Court's notice of confirmation of registration of her Korean divorce. What is that? This document is akin to a court order. It recognizes and officially registers her Korean divorce in the Superior Court of California, Your Honor. So in registering it, is there any determination as to the legitimacy of the out-of-state or foreign divorce? Yes. So the Court, in essence, receives a document, which is a request, and this was filed back in 2015 by prior counsel. It was never served by the clerk due to clerical error. I don't know why, but at some point last year, the clerk became aware of the fact that it was never served on the parties. And then the clerk served it sometime on July 9th of 2018, I believe. Is there a California statute or provision that would tell us what is the legal effect of this document? Not that I know of, Your Honor, but this document is a recognition of the court extension of international comedy, and that's recognized by... I mean, that's a lot to read into a piece of paper that got filed. It may be that the California courts would give comedy to the divorce, but I'm not sure that... This just means that they've registered the foreign decree. What did the application say? And you said it wasn't served on the parties. Well, who filed it? My client's prior counsel filed it, and... So there wasn't any need to serve it on him, right? Correct. There was no service until it was brought to the court's attention that... Is there a pleading that accompanied the filing of the confirmation? No, I believe it's basically... The request is paperwork. It's family law court, and you file it with the court. The clerk then serves both parties if neither party to the foreign divorce... I mean, how does that happen? That usually there is, particularly in family law, there's a particular California provision that permits this. Your Honors, there are forms that the family law court uses, and then there are procedures that the clerk... Well, anyway, the fact of the matter is we don't know what this means legally. It could be that some fact-finding might be in order to figure that out, but we don't know what this means other than it's a piece of paper that says what it says. Well, Your Honors, in the notice itself that was served upon me and upon Mr. Choi, it said... And I don't have this in the record, but it is in the Superior Court... Well, then, if it's not in the record, it should have been filed as part of the request for judicial notice because we can't really argue about that now because the other counsel doesn't have it and we don't have it. Yes, Your Honor. So if you want to ask for another request for judicial notice, we would entertain it. I don't know whether it would be granted, but we can't discuss it here. It wouldn't be fair to anyone. Sure. Your Honors, I would like to request a motion... No, not an oral motion. You can make a written motion. Okay, sure. Well, Your Honors, it is the appellant's admission that this document is akin to a court order, and that's made under the International Principles of Comedy, which are enunciated by the Supreme Court of California in In Re. Stephanie M. And I will quote from page 314 of that decision, the Doctrine of Comedy prescribes that a court of this nation recognize the judgment of a court of a foreign nation when the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy. Yeah, but that argument collides head-on with Code Provision 2091 that says these foreign divorce decrees are not recognized. So I don't understand how a forced decree that is specifically precluded under California law can be entitled to comedy. That's an excellent question, Your Honor. Section 2091 is a part of four sections that form the Section 2093, which limits the application of 2091 based on full faith and credit to out-of-state judgments. This is such a... That's not argued in your brief, is it? Yes, it is, Your Honor. Yes, it is. And this International Doctrine of Comedy is akin to full faith and credit, where this is a foreign judgment, and as long as it doesn't violate proper jurisdiction or domestic public policy, then the court generally does recognize it. Well, it appears that that's the case, because it's inconsistent with 2091. Your Honor, there have been instances of the California Court recognizing foreign divorces, even when both parties are domiciled within California. We saw this in Phillips v. Phillips, which is cited in my brief. The California Court of Appeal in 2014 recognized a divorce granted by Guam, even though both citizens were domiciled in California. Well, there are different aspects. You could certainly recognize under full faith and credit that there was a divorce in Korea or some other jurisdiction, but not necessarily for purposes of saying that it was a legitimate divorce under California law. There could be other reasons one might look at, for full faith and credit and international law, why you might look at a foreign decree, but that doesn't really apply here. The issue we have is whether under 2091, the question is domicile and whether both parties were domiciled in California. So I think it would be more productive to figure out what the case law says about domicile with respect to your client and whether, in fact, she even could be domiciled in a legal way because she was not here on any kind of permanent status that would give her a domiciliary status. Yes, Your Honor, consider for a moment that international comedy does not apply. So we must look into her domicile at the time she seek her divorce. I've set forth numerous case law from Supreme Court, 9th Circuit, 11th Circuit, 3rd Circuit, as well as the California Supreme Court and Court of Appeals and the Code of Regulations and the California Code of Education that all agree that unlawful aliens, tourist visa overseers such as my client, lack the legal capacity to establish domicile. And the government had no argument against that until the very last minute upon the final exchange of briefs before the District Court. It's docket number 50 in the case where they brought up Marriage of Dick. Marriage of Dick really has no application to this case. Marriage of Dick is about the California Superior Court's extension of its jurisdiction to, yes, unlawful aliens to allow them to avail themselves of the California court system to seek divorce. We're not contesting that my client could have sought divorce in California court, but that case, Marriage of Dick, really has no applicability. The provision that it was examining is Section 2320 of the California Family Code, not 2091. 2091 again is Uniform Divorce Recognition Act. Section 2320 does not figure into it. Moreover, even if we are to contemplate Marriage of Dick's discussion of domicile as it applies to unlawful aliens, it didn't conduct a full inquiry. It considered Elkins v. Merino, which is Toll v. Merino's predecessor, but it didn't consider Toll v. Merino at all, which is completely on point. And if it had, I think it would have reached a very different way to extend its jurisdiction to unlawful aliens. But federal law seems relatively clear to me that your client is precluded from possessing the subject subjective intent necessary for domicile here. Correct. That is my position, Your Honor, and that's why Section 2091 never applied to her or her ex-husband, Mr. Choi. And what's more... To adapt to your position, we'd basically have to say that Dick did not really address this particular issue, but that we have later California Supreme Court and Ninth Circuit cases that talk about the status of undocumented or illegal aliens, correct? And those are the ones that you say really would supersede whatever Dick might say. Correct. The Supreme Court decision actually predates marriage of Dick. So the fact that marriage of Dick didn't consider Toll v. Merino is, I don't know why. But to the extent that marriage of Dick should or shouldn't have considered domicile of undocumented aliens is really besides the point because marriage of Dick was defining the term resident, what it means to be a resident to seek dissolution of marriage in California. Unfortunately, the Dick decision, which kind of mixes and matches residence and domicile, and I know later cases say this has been a common problem with courts. In terms of the residence requirement, is that the only... Was it residence or domicile that would determine whether there was jurisdiction in Dick? In Dick, they are determining the definition of resident. The term in Section 2320 is resident. The judge or the court in Dick said residence is synonymous with domicile. So yes, the court took into account that husband who was trying to get out of the divorce case, that husband who was a B visa tourist holder, his subjective intent in being in California, therefore, he was a resident. 2091, we're talking about domicile. Domicile is a federally constructed term that must be a uniform throughout all states. Domicile does not necessarily have anything to do with intent or residence for that ruled that the Indian children who are not born had never set foot on the Indian reservation and whose parents and themselves had no intent on them being domiciled there were nevertheless domiciled there. So you see, Your Honors, domicile is a legal construct that the law assigns to each person. And we see this... What do you think of the elements of domicile? Domicile is generally residence plus intent. I thought you just told us that residence intent has nothing. You just said a minute ago, intent has nothing to do with residence. I mean, the intent has nothing to do with domicile. Your Honor, in my mind, domicile is sometimes both, sometimes neither. I don't understand what that means. It's a legal construct, Your Honor. That's what we spend most of our time with. Yes, Your Honor. In Section 2320 of the... In California, would you concede that there was an intent component to domicile? In California, where the state adopts the intent component of the federal law definition of domicile, such as the Education Code and Code of Regulations, the statute always says, somebody can be a resident unless the Immigration and Nationality Act precludes that person from establishing domicile. So the state does not attempt to define domicile. The state says, if the INS says they can't establish domicile, then they can't establish residency. So are you asking us then to really look at the federal law on what domicile is? Correct. Correct. Do you want to save your remaining time for rebuttal? You have a minute left. Yes, Your Honor. Thank you. Good afternoon, Your Honor. Sergio Sartani for Appalese. Notwithstanding any of the foregoing, the District Court properly concluded that appellant was not entitled to naturalize. The issue here is whether USCIS applied existing California law to conclude that California was precluded from recognizing appellant's 2009 foreign divorce when she adjusted status in 2011. The District Court properly applied the relevant statute, 2091, and relied on In Remarriage Dict to find that appellant was domiciled in 2009. As a threshold matter, it's undisputed that California law, not the law of the foreign jurisdiction where the divorce occurred, in this case South Korea, applies to determine whether the state will recognize the foreign divorce. And contrary to what you may have just heard, California clearly defines domicile for its purposes, which is physical intent or physical presence plus an intent to remain indefinitely. Now, before USCIS, it was appellant's burden to show that she was eligible for naturalization in every respect. That included showing she was not a California domiciliary in 2009 when she commenced her foreign divorce. She conceded that before USCIS. It's now a matter of record. So what do you think of the import of the representations she had to make to get the visa that she initially got? The terms of her visa, B-2 tourist visa, would require a foreign residence with no intent to abandon it. Right. However, Your Honor, and I take issue with counsel's characterization of a certain line of cases, we're not here arguing that the line of cases that say, okay, if you're here on a B-2 visa. So the government is here, is not holding her to those promises she made. She was out of status in 2009 at the time she commenced her foreign divorce. She had overstayed. Okay, well, that seems even worse. How could she – first, she's on a temporary visa in which she can't have the intent or the legal capacity to have residence in the United States. So she has to maintain her residence in Korea. Then she's out of status, so she's still undocumented or illegal. How is it she could all of a sudden then be permitted to have this intent? Because an examination of California law simply allows it, Your Honor. No, but we started with the federal law, and she's now in – she's in a federal visa situation. She's in an overstay situation, and that doesn't somehow transform her prior lack of intent to somehow the ability to form intent. So under federal law, isn't she in a situation where she can't legally have the intent to stay in the United States? Well, two points there, Your Honor. First, I think it's uncontested that if you're here on a B-2 visa, you're generally legally incapable of forming domiciliary intent. Now, when you're out of status, I think that's an open question for federal law purposes. However, it's important to remember that this is an interpretation, an application of California law by USCIS, flash-frozen in 2009. No, but that's – no, but it's not. It's not. It's not. Let me just kind of keep going because let's assume she was here on a temporary visa. She was. That's correct. And that's how she arrived. That's how she arrived. Let's assume she hasn't gone out of that status. She's just here on a temporary visa. She then goes and gets her Korean divorce stamped through the Korean consulate. At that point, would it be your view that she is a domiciliary of California? If she meets the presence plus intent because she's no longer subject to the – But she can't – she can't – she's on a temporary visa, and you just told me she can't have the intent. No, on a temporary visa, no, Your Honor. But that's my – I'm going to walk you through this, okay? So stick with me. She's on a temporary visa, and your position is she cannot – if she were on a temporary visa when she got the Korean divorce via the consulate, she would not be a domiciliary of California because she couldn't have the intent to reside in California, correct? Reside indefinitely, correct, Your Honor. Indefinitely, okay. Yes, under the 8 U.S.C.U. Correct. So now we just shift slightly. The temporary visa expires, and she's here in an undocumented status. And how is it under federal immigration law she could now have an intent to be a domiciliary of California when she's not here even permitted to be a resident of California because she needs official immigration status? So somehow by overstaying her visa, you're saying she now is permitted to form that intent? By overstaying her visa, she's no longer subject to the restrictions of the terms of her visa. Wait, I don't follow that because you violate the terms of your visa, the requirements that you stipulated to get it are somehow out of the window? Evaporate? Not to get it, Your Honor, but once the visa expires, you're here in an unlawful status. Correct. But you still made these representations, and I'm somewhat surprised to see that the government is now saying, you know, she can't be held to them. Well, you make the representation for the term of the visa, which is a fixed term. So, for example, if somebody was here – That's not true. You make the representations in order to get the license. To get a temporary visa to stay in the United States for X period of time. Yeah, I think that the consequence of what you're saying would have huge implications for the government. Oh, sorry. Huge implications for the government in terms of federal programs, in terms of for states, in terms of state programs, because you would now be kind of contradicting the federal and the Ninth Circuit law that says, well, if you're in this undocumented status, you can have this intent to be a resident or domiciliary. But the Ninth Circuit has said, no, you can't. But the cases are quite different. And your argument, and correct me if I'm missing something, would open the door to, you know, thousands of undocumented aliens becoming domiciliaries and entitled to in-state tuition and health care, et cetera, et cetera. I mean, that's what I said. There's huge implications to the government's position. Is that what you're asking us to do? Are you asking if there's a supremacy clause issue here? I'm asking what I just asked. Well, we're only looking at the interpretation of California Family Code 2091. So is it your position that the federal government, in deciding what the criteria for visas are, cannot fashion its own tests for domiciliary? Well, Your Honor, there is no definition of domiciliary in the INA. And if there was, we would have to implement it as a matter of the application of the federal law. Well, in order to get the visa, I have to commit or say that I am unable, as a matter of law, to meet the tests for domiciliary. For a fixed period of time. Now, suppose you were on a B-2 visa and you did form an intent to remain in perpetuity here in California. You would no longer be adhering to the terms of the visa. Therefore, technically, you would be out of status. Now, in remarriage DIC reflects this kind of fact-specific analysis when it comes to determining whether an alien has a domiciliary intent for the purposes of the California Dissolution Statute. But you're not really bound, Your Honor, as you can see. You could form that intent. Now, that's not an easy thing to prove. And that's why In re DIC and the other California cases authorize a fact-specific analysis to determine whether subjective intent is present. When you are out of status, you've clearly... But you see, the one difference is, I mean, I recognize that In re DIC involves someone who had been a U.S. citizen, but then he later becomes Canadian and several other things. But you're suggesting that somehow when you move from the status of a visa holder, a legal visa holder, to an overstay, that all of a sudden these immigration laws somehow don't apply. And what category are you in when you overstay your visa? You're in an unlawful status, Your Honor. Okay. And you're in an unlawful status because you're violating your visa. You have violated the terms of your non-immigrant visa. And the terms of the non-immigrant visa are... You can't become a domiciliary. You can't become a domiciliary. But that's not what she's violated. What she's violated is you're supposed to go back home. You're only here temporarily. So are you saying that she's violated the intent clause somehow? Clearly. How? She's remained... In this particular case, not only has the appellant admitted that she was a domiciliary in 2009, but the evidence shows it. She entered in 2003, overstayed her visa, did not leave California since then. She has a family here with two children. The statutory terms had been violated. At the time, in 2009, she was a visa overstay. And we are not applying the INA. There's no definition of domicile in the INA. Correct. So as the USCIS was required to do, they had to go to the California state statute that controls 2009. But why don't those other cases, the one that came before Toll or whichever, and the California Supreme Court, and the federal cases, why don't those actually prevail because they deal with this specific issue? And Dick is the California Court of Appeal case with respect to the California Court of Appeal. You've got Ninth Circuit and you have state Supreme Court cases that are at odds with Dick. Your Honor, that may be true as far as in reDick's interpretation of 2091 in domicile, but we are not taking issue with those cases. This case falls outside those cases because, as I have said, she was no longer bound by the statute. She had evidenced conduct that wasn't... She's still bound by it because you're going to... She's not bound by the B-2 visa. She is an overstay. Yeah, but when they're an overstay, then you can, what can you do? You can deport them. Correct, Your Honor. And why can you deport someone if they overstay their visa? Why is that, Your Honor? Because they're here in an unlawful status and they're subject to removal on that basis as a visa overstay. Okay, and the part that she violated would be that she stayed too long past the date on her visa, correct? She also evidenced a clear intent to remain in California indefinitely. She is now outside the strictures of the B-2 visa statute. You know, that's nonsense. I mean, the more you repeat that, at least for me, the less convinced I am. And it's a huge problem for the government if you are saying, as we asked you before, that it's the government's position that the representations that one makes to get these visas go out of the window as soon as you're out of status and a person is perfectly free to become a domiciliary. That is a huge concession by the government. So then people would affirmatively do that and then they could get in-state tuition, right? No, Your Honor. Why not? If you're talking about the Regents' case. We're not talking about cases. Well, no, let him finish. Okay, good. Please. The California Education Code that was at issue in the Regents' case directly incorporated the INA, directly mentioned the INA. So as a result, we don't have that kind of implication of federal authority here. We have an interpretation of a California state code by USCIS. Whether it was valid law or not at the time of its application determines whether this agency did or did not correctly deny the application application. But if we were to determine that the agency did not appropriately interpret the application of 2109 and domicile and residence, then that would mean that her divorce was not unrecognizable, correct? If the agency was wrong in its interpretation of California law. The agency's sole basis here, Your Honor, is an interpretation of 2091. So that's really what we have to figure out, was it correct or incorrect? In the absence of contrary law, Your Honor, we believe the agency correctly interpreted state law, which they were required to do. Before you sit down, just run me through it, because that, as I was pounding you on a minute ago, is what is hanging me up on here. Sure. Take you through the decision, Your Honor? No, why you think this was a correct interpretation of California law. Because California law requires a physical presence plus an intent to remain. There's no California law that says that somebody here unlawfully cannot form a domiciliary intent. Appellants admitted to that intent. Why wouldn't that apply when you were in status, when your tourist visa was valid? That you can still form a domiciliary intent? Yeah. Why do you even have to wait until the visa expires? Under your theory, if it's California law, it doesn't matter what I said when I went to the consulate in Seoul or wherever to get the visas. Once I get here, I'm planning to stay, and, you know, this is my residence. So if we were interpreting the INA. Why doesn't that carry the day? Well, if we were interpreting the INA directly, 8 U.S.C. 1101, and the statutory terms that define B-2 visas there, for example, it would be 100% correct. They would be legally incapable of forming a domiciliary intent as long as they didn't ---- but, again, if they evidence a clear decision to remain, they would have violated ---- No, but under your theory, the driver is the definition of domicile under California law. Correct. So I don't understand why the ---- as soon as ---- if that's true, I set foot in California. You know, I got my tourist visa last week. I set foot in California. I don't see why the representations that I made to get the visa are worth anything because California law, as you said, looks to, you know, residency and intent. For the purposes of the INA, you would be not ---- you could have formed an unlawful intent, a fraudulent intent when you applied for it, if you had that thinking, and you could be ---- you could have violated the terms of your immigrant visa for the purposes of the Immigration and Nationality Act if, in fact, you did make up that intent. Now, NREDIC does allow nonimmigrants, and it's valid, nonimmigrants to form a domiciliary intent in California on a fact-specific analysis. That is good law. It hasn't been overturned for the application of the dissolution statute in the State of California, not for the interpretation of the Immigration and Nationality Act or any other federal law. Let me ask you just one last question. I want to make sure I understand your position. Sure. The day after you overstay your visa, aren't you in violation of two potential parts of that visa? One, the time restriction because you didn't go back home, and the visa didn't permit you to form an intent to be domiciled. Aren't you still bound by both of those the moment you overstay your visa? You are now in an unlawful status. That's the effect of overstaying. Because you overstayed your visa, because you violated the provision of a document that you had, you know, gotten and sold. The question has to do with the intent. So you're saying before I thought you said really it's an unsettled question about someone who overstays the visa, what that status is on domicile. For the purposes of 2091 California Code, yes, Your Honor. Okay. It is. And the Mississippi Choctaw Indian case, which opposing counsel referenced, is readily distinguishable, for example. While that case dealt with domicile too, it did so in the context of a federal statute. Statute, yeah. We don't have that here. That is the core definition. Of course, what we have is we have a federal statute that gives you a status, and then it collides with the California statute. So thank you for your argument. May I make one more sentence? Please. To be clear, appellant remains subject to any and all provisions of the Immigration and Nationality Act in regards to whether she wants to readjust, whether she becomes removable for any reason. That is not at issue, not from our view. Did this case ever go to mediation? Yes, Your Honor. I understood, and counsel could correct me, that the agency had approached counsel. I had also called her some months ago. And I have it on word that the agency is more than willing to assist the appellant to remedy what statutory ineligibility she has for naturalization. She also has an alternate avenue of naturalization. She can become the immediate relative of her United Citizens son and reapply to adjust on that basis and to naturalize. But I know that the government stands willing to assist. Thank you. What about the one thing, the motion for judicial notice? Did the government take a position on that? Yes, Your Honor. First of all, we don't recognize that as what? It doesn't appear to be a recognition. I don't want to take you long down the road. Yes or no? No, we don't believe that that is a recognition of foreign divorce. We don't recognize any authority that would allow the court to do that. What do you think? What is it? We don't know either. But we don't know. And we haven't had any backup, so I don't think we want to argue that today. Other than you can say we understand your position. It doesn't have any legal effect on this case. It does not. Okay. Thank you. Thank you. You have a minute for rebuttal. Your Honors, when I contacted opposing counsel about the motion for judicial notice, notice he did not oppose it. So as far as I'm concerned, it's unopposed. Marriage of Dick has nothing to do with Section 2091. Section 2091 can't even be found in the text of Marriage of Dick. Section 2091 is about the interpretation of the word domicile, which, as your Honors have correctly noted, is very much supported by federal law as well as California law. If we're talking about California law, California has adopted the federal law interpretation of domicile as precluding unlawful aliens from establishing domicile. And your authority for that is what? Regents v. Superior Court, 1990 case in California. So the last question we discussed with him, you know, alternate avenues, possible mediation, and is your client open to those as well? Your Honors, that is a fairytale fiction that is not fair to subject my client to. To deny her naturalization, she would be immediately subject to having her lawful permanent resident status rescinded by an immigration judge. She is in rescission proceedings right now, which are being stayed pending this proceeding. If she has her status rescinded, she will be placed in removal proceedings. As a visa overstayer, she can and she very likely will be placed in detention proceedings. How can she marry her husband while she's in detention? Who knows if her husband will even remarry her? Marriages fall apart for all sorts of reasons. And during that time, he may die. If her U.S. citizen son – You could also lose this case, correct? And then where would she be? Exactly. There's no – there's no – it's completely discretionary. There's no appeal of a U.S. citizen – USCIS denial of her adjustment of status. And if her son were willing to petition for her, there would be an application in file today. But there's been – there have been no proceedings, right? I mean, no mediation proceedings. Mediation. That's laughable, Your Honor. I mean, I've extended myself. The only mediation is to drop this case and to do everything that the government wants us to do, which is to remarry and redo everything, which will take at least another five years, extending 10 years beyond the time when she could have become a citizen. Thank you. Thank you, Your Honor. Thank you both for your argument. Thank you both. It's a very interesting case. Thank you also for the briefing, which is quite extensive. Park v. Barr is submitted.
judges: Parker, Farris, McKeown